HON. F. J. MOSES, CHIEF JUSTICE.
HON. J. J. WRIGHT, ASSOCIATE JUSTICE.
HON. A. J. WILLARD, ASSOCIATE JUSTICE.

---

HEARD NOVEMBER TERM, 1875.

HOMESTEAD ASSOCIATION *vs.* ENSLOW.

The homestead exemption allowed by the Constitution and Acts of Assembly cannot
be taken against a mortgage given since the adoption of the Constitution and before
a homestead exemption had been claimed and set off in the mortgaged premises.

BEFORE REED, J., AT CHARLESTON, APRIL TERM, 1875.

Action by the Homestead Building and Loan Association against
Joseph A. Enslow, the Citizens' Building and Loan Association of
Charleston, and others.

The case was referred to Thomas Y. Simons, Esq., as Referee, in
whose report the facts are fully stated.

The report is as follows:

Joseph A. Enslow, of the city of Charleston, being the head of a
family, on the 4th day of February, 1871, became seized in fee, by
purchase, of the lot of land, with the dwelling house and out-

VOL. VII—1

buildings thereon, situate on the North side of Society street, the subject of this action.

Mr. Enslow being thus seized, continued to occupy the premises as a residence for his family and himself until the 18th day of March, 1875, when the premises were sold under the judgment and decree of this Court.

In February and April, 1872, and April, 1873, Mr. Enslow, being thus in possession as owner of the property, executed and delivered to the Homestead Building and Loan Association his three several bonds, secured by his three several mortgages of the lot and buildings in Society street.

In February, 1874, Mr. Enslow executed and delivered his bond to the Citizens' Building and Loan Association, secured by a fourth mortgage of the said premises, and in June, 1874, executed and delivered his bond to Egisto P. Fabbri, in trust, secured by a fifth mortgage of the said premises.

Proceedings in foreclosure were instituted in this action, and Mr. Enslow, one of the defendants, in his answer, sets up a claim to a homestead exemption of one thousand dollars in the said real estate.

This Court, on the 24th of February, 1875, ordered, among other things, a foreclosure of the mortgages, a sale of the property, and a reservation from the net proceeds of sale of the sum of twelve hundred dollars, subject to the further order of this Court, to abide the claim of the defendant, Joseph A. Enslow, for a homestead in said premises and costs and expenses that may be incurred in the determination thereof.

The question, therefore, submitted for my judgment, is, whether, under the Constitution and laws of this State, Mr. Enslow is entitled to a homestead exemption in the premises thus mortgaged.

The homestead is entirely a matter of statute regulation. It was unknown at the common law. Nor can there be much light derived from the decisions in other commonwealths, because these depend upon the language and provisions of their respective Acts of Assembly. We must look, therefore, to the enactments in the State for a solution.

While it may be conceded that a statute creating a homestead cannot have a retroactive effect, it is clear that it operates upon all contracts entered into after it becomes of force upon the statute book. It there forms part of the law of the land, having relation

to and regulating all rights and duties which spring out of its existence.

Section 32, Article XI, of the Constitution of this State, adopted by the people in Convention assembled, in 1868, declares :

"The family homestead of the head of each family residing in this State, such homestead consisting of dwelling house, outbuildings, and lands appurtenant, not to exceed the value of one thousand dollars, and yearly product thereof, shall be exempt from attachment, levy or sale, on any mesne or final process issued from any Court"—"*Provided*, That no property shall be exempt from attachment, levy or sale for taxes, or for payment of obligations contracted for the purchase of said homestead or the erection of improvements thereon."

The words of the Constitution are imperative—"shall be exempt from attachment, levy or *sale*." The exceptions against which the homestead shall not prevail are few and explicit—(1) taxes, (2) payment of *obligations* contracted for the purchase of said homestead, (3) the erection of improvements thereon. *Expressio unius, exclusio alterius*.

In this action there is a sale prayed for, and obtained, under the judgment and decree of Court. The bonds or obligations to secure the payment of which the mortgages were executed are neither for taxes, purchase money or improvements.

The action is, by the foreclosure and sale of the premises mortgaged, to enforce the payment of the contracts or obligations, of which the bonds are the representatives.

Whether it was wise for the people in convention to declare that there shall be a homestead exemption, except in the few instances so expressly and implicitly asserted, is not the question. The simple issue is, what does the Constitution provide?

I am of opinion, therefore, as a matter of law, that even against the plaintiff's bonds and mortgages, the defendant, Joseph A. Enslow, is, as the head of a family, entitled to the exemption claimed.

The proceeds of sale, however, after allowing the homestead, is sufficient for the payment of the plaintiff's claim. The parties, therefore, more especially interested are the defendants, the Citizens' Building and Loan Association, and Egisto P. Fabbri, in trust, who are subsequent mortgagees.

The case of the homestead exemption is much stronger in reference to their obligations. The Constitution, (Section 32, Article XI,) hav-

ing laid down the fundamental and general principles which should be applicable, made it the duty of the General Assembly to enforce the provisions of the homestead by suitable legislation.

The General Assembly, by "An Act to revise and amend an Act entitled 'An Act to reduce all Acts and parts of Acts to determine and perpetuate the homestead into one Act, and to amend the same,'" approved February 22, 1873, after re-declaring in substance the provisions of the Constitution and providing for a money value of one thousand dollars, where it was impracticable to set out the homestead in land in kind, enacts :

" SEC. 5. No waiver of the right of homestead, however solemnly executed, shall be binding upon the head of the family, or, in case of his or her death, his or her heirs, so as to defeat the homestead herein provided for."

The bonds and mortgages to the Citizens' Building and Loan Association, and to Egisto P. Fabbri, in trust, were created and executed respectively in February and June, 1874, more than a year after the passage and approval of this Act of the Legislature. Their execution and delivery surely, therefore, in view of the express and unequivocal terms of the Act, can scarcely be held to be a waiver of the homestead. I find, therefore, as a matter of law, that the defendant, Joseph A. Enslow, is entitled to one thousand dollars out of the proceeds of the sale of the premises in Society street, made under the process of this Court, and recommend that out of the twelve hundred dollars reserved for this issue, the payment of this amount with interest from the day of sale, and the costs and expenses attending the litigation of this question, and that the residue be applied to the mortgages unpaid, according to the priority of their claims, as heretofore reported.

The defendants, the Citizens' Building and Loan Association and Egisto P. Fabbri, excepted to the conclusions of the Referee, as to the homestead in this case, because the defendant, Joseph A. Enslow, is not entitled to homestead out of real estate mortgaged by him.

The decree of the Circuit Judge is as follows:

REED, J. The report being read, and counsel being present and waiving argument, it is ordered that the above exception be overruled, and the report of the Referee in this cause be confirmed and made the decree of this Court.

The defendants, the Citizens' Building and Loan Association, appealed on the following grounds :

1. Because, under the Constitution and laws of South Carolina, no homestead exemption is given in property mortgaged until the mortgages are satisfied.

2. Because, unless property has been specially set apart as a homestead in the manner provided for by law, the right to sell is indisputable, and the right to mortgage follows the right which the owner of the fee has to dispose of the property.

*Tobias*, with whom was *Cohen*, for appellant :

There is but one question in this case, and that is, whether Joseph A. Enslow, a bankrupt, who had mortgaged a certain piece of property twice in 1872, once in 1873, and twice in 1874, is entitled to claim homestead in that property as against the first of the two mortgages given in 1874, in a suit for foreclosure of mortgage in which he and his assignee in bankruptcy were parties, and in which the decree was filed after he had been adjudicated a bankrupt.

While this question narrowed down to these limits is of very little consequence, except to the parties immediately in interest, being, as it is, confined to a very small number of cases, still the establishment of principles on which this and kindred questions are to be determined is of the greatest importance, as it is necessary to enable all who are interested in making investments in real estate to act with certainty. What society requires is, that rights and liabilities should be accurately defined. Once fixed, men can regulate their actions accordingly; but when they are uncertain, business is impeded, the everyday relations of life are obstructed, and society is thrown into confusion.

Homestead laws are of very recent origin, and are very different in the several States in which they have been enacted. Hence it is, that in the discussion of the various questions arising under them, there is no body of precedents by which we can be guided, and we are of necessity compelled to fall back upon general principles of law to interpret the constitutional and statutory provisions on which they are founded.

The Constitution of South Carolina, in Article XI, Section 32, provides as follows: " The family homestead of the head of each family residing in this State, such homestead consisting of dwelling

house, outbuildings and lands appurtenant, not to exceed the value of one thousand dollars, and yearly product thereof, shall be exempt from attachment, levy or sale, on any mesne or final process issued from any Court: *Provided,* That no property shall be exempt from attachment, levy or sale for taxes, or for payment of obligations contracted for the purchase of said homestead or the erection of improvements thereon."

It requires no complicated rules of interpretation to understand this provision of the Constitution. It means simply that when homestead is once established, it is exempt from attachment, levy or sale on any mesne or final process, subject only to certain exceptions enumerated in the Article, but such exemption clearly does not attach until homestead is fixed.

Under the statute laws of the State homestead is only fixed when one of two conditions happens:

1. When any real estate of any head of a family is seized upon, on any mesne or final process, the Sheriff is directed to cause a homestead to be then set aside, not to exceed in value the sum of one thousand dollars.

2. When the head of a family dies, his widow or children are entitled to have a homestead to be set aside in the manner provided by law.

The rules of interpretation, both of constitutions and of statutes, are the same.—Potter's Dwarris on Statutes and Constitutions, 654. And one of the established canons of interpretation is that "statutes are to be construed in reference to the principles of the common law. For it is not to be presumed that the Legislature meant to make any innovation upon the common law further than the case absolutely required. The law rather infers that the Act did not intend to make any alteration other than what is specified, and, besides, what has been plainly pronounced; for, if the Parliament read legislative body] had had that design, it would have expressed it." This is the rule both in England and America.—Potter's Dwarris, 185, and note.

Under the common law, the right of the owner of the fee simple to alienate is perfect, subject only to the right of dower in the wife, or the rights of a husband in the lands of the wife. It has not been claimed, nor can it be claimed, that either the constitutional or statutory provisions of this State have taken away the right of alienation, in fee, of any property of which a man is absolutely

seized, until homestead attaches by operation of law,—that is to say, until levy on mesne or final process is made on the property of a head of a family, or until he dies. When either of these events takes place, the homestead is fixed; and when once fixed, it cannot be waived, nor can any one, at any time previously, waive his right to it if he has the kind of property to which it attaches by operation of law the moment the right arises.

This is the plain meaning of the clause of the Act of 1873, forbidding waiver of the right of homestead, as is evident from the words of that Section, which provides that "when thirty days shall have elapsed after the filing the return of said appraisers, setting off a homestead to any debtor, according to the provisions of Section 1 of this Act, and no good cause has been shown or exceptions filed against such return, such debtor may have such return recorded in the office of the Register of Mesne Conveyance of the County in which the same is located; and upon such return being so recorded in thirty-three days after the proceedings have become final, *the title to the homestead so set off and assigned shall be forever discharged from all debts of said debtor then existing, or thereafter contracted."* And also from the words of the other Section, which provides that no waiver "shall be binding upon the head of a family" *when homestead is fixed by levy of mesne or final process,* " or, in case of his or her death, his or her heirs," *when homestead is fixed by the death of the head of the family,*—or, in other words, no man can waive the right of homestead generally, so that it shall not attach in case he should have property at the time that homestead is fixed which he has not disposed of prior to the time at which it is fixed in some method sanctioned by law. This interpretation is made the more certain by the closing words of the waiver clause, which are: "So as to defeat the homestead herein provided for."—15 Stat., 369, §§ 3, 5.

If the common law right to sell is not taken away by the Constitution or statutes, (and there is nothing in either which takes away that right,) then the right to convey carries with it the lesser right to mortgage.

A mortgage at common law vested the legal estate in the mortgagee, and Cruise lays down the rule in the following words: "It has been stated that upon the execution of a mortgage deed, the mortgagee becomes seized of the legal estate, and may enter into possession unless prevented by the express terms of the contract;

but in equity the lands mortgaged are considered as a pledge only in his hands for securing the repayment of the money borrowed."— Cruise Dig., Tit. XV, Chap. 2, § 11.

Chancellor Kent defines a mortgage as follows: "A mortgage is the conveyance of an estate by way of pledge for the security of a debt, and to become void on the payment of it. The legal owner-ship is vested in the creditor, but in equity the mortgagor remains the actual owner until he is debarred by his own default or by judi-cial decree."—4 Kent, 134.

Our statutes of 1791 and 1797, which are re-enacted in the Revised Statutes, provide that *the mortgagee shall be entitled to recover satisfaction for the money lent or due out of the land*, and they further recognize that the property remaining in the mortgagor is only an equity of redemption. The words of the statutes are: "*Provided*, That, notwithstanding the foregoing provision, *all releases of the equity of redemption* shall be binding and effectual in law;" and in another part they provide that on judicial sale the mort-gagor shall be forever *barred* and *foreclosed* of his *equity of redemp-tion*.—Rev. Stat., 536.

The preamble of the Act of 1791 sets out, among other things, that it is enacted because the right of the mortgagor to his equity of redemption is, in the present mode of exercising that right, attended with inconvenience, and for ascertaining when the equity of redemption of the mortgagor shall be barred.—6 Stat., 169.

These Acts have been too often settled by judicial decision in our Courts to admit of any doubt as to their meaning. In *Ex parte City Sheriff*, (1 McC., 399,) Judge Huger, in delivering the opinion of the Court, says, with regard to the Act of 1791: "This Act pre-vents the mortgagee from proceeding against the land by ejectment, which could be done at common law. * * * * * Should another judgment creditor proceed to sell the property mortgaged to satisfy his own demand, he could only sell what really belonged to the defendant, that is the land subjected to the lien of the mortgage, and the purchaser, having notice of the mortgage and recording his notice, could only purchase subject to the mortgage,—in other words, all that the mortgagor possesses, and therefore all that could be sold, is the *equity of redemption*."

In *McClure* vs. *Mounce*, (2 McC., 423,) Judge Colcock, in delivering the opinion of the Court, says: "The abstract question is, when mort-gaged land is sold without a regular foreclosure, either at law or in

equity, what interest passes to the purchaser? and the case above mentioned (*Ex parte City Sheriff*) furnishes a direct answer. *The equity of redemption only is sold.*" In *Schnell* vs. *Schroder*, (Bailey Eq., 332,) the Court, through Judge David Johnston, says: " In regard to Schroder's bond, I am very clear that if, as it is stated, the lot was sold under execution, subject to the mortgage, and purchased by Boyer, the bond is extinguished. The equity of redemption was all that Schroder had in the lot upon which an execution could operate, and that having been sold and vested in Boyer, (the mortgagee,) his right to redeem was gone. The mortgage vested the lot in Boyer subject only to this right to redeem. * * * * * Boyer had unquestionably the right to buy, and Schroder to sell and release *his equity of redemption*, and *whether he sells*, or it is sold under legal authority, the legal consequences are precisely the same." In *McLure* vs. *Wheeler*, (6 Rich. Eq., 343,) Chancellor Dunkin, in his decree, subsequently confirmed by the whole Court, consisting of Chancellors Job Johnston, Dunkin, Wardlaw and Dargan, says: " The thing sold, that on which alone the Sheriff had any authority to *levy the execution*, was the mortgagor's *equity of redemption*." "It was ruled in *Schnell* vs. *Schroder*," continues the learned Chancellor, "(and the doctrine has since been repeatedly recognized,) that a purchase of the equity of redemption by the mortgagee extinguishes the mortgage debt, and that the effect was the same whether the purchase was directly from the mortgagor or from the Sheriff, under an execution against him.''

Under these cases it is plain that the only property which the mortgagor has in the estate mortgaged is an equity of redemption. While it is true that so long as the estate remains unchanged in his hands it is equivalent to the fee in the mortgagor, and the mortgage is only a lien on the land, still the moment an attempt is made in any way to change the status of the estate, whether by himself or by another, all that the mortgagor has is *an equity of redemption*. What the mortgagor can sell is *an equity of redemption*; what the Sheriff can levy upon is *an equity of redemption*—nothing more and nothing less.

There is another class of cases in our books on this subject which, beginning with *Durand* vs. *Isaacs*, (4 McC., 54,) and followed by *Stoney* vs. *Shulz*, (1 Hill Ch., 465,) *Mitchell* vs. *Bogan*, (11 Rich., 686,) and *Williams* vs *Beard*, (1. S. C., 308,) declare that when the mortgagor is out of possession the common law applies, and at common law the legal estate is in the mortgagee.

If, under the first class of cases cited, the law of this State is that a mortgagor has nothing either to dispose of or to be taken from him, other than an equity of redemption, and if, when out of possession, the rule of the common law applies and the mortgagee is the owner of the legal estate, then it follows that the only property to which the mortgagor can at any time lay claim in case his possession is either threatened by legal process or taken is an equity, and neither the Constitution nor the statutes of South Carolina *gives a homestead in an equity.*

From another standpoint, it would seem clear that the exemption laws do not apply to mortgages. The policy of the law is opposed to preventing property from changing hands. For centuries the constant tendency both in England and in America has been to remove all trammels from the free transfer of real estate. The right to transfer real property is recognized even by the most earnest advocates of such a construction of the homestead laws as would give the right to claim homestead in mortgaged premises at the expense of the mortgagee. The right to sell, of course, carries with it the right to execute a power irrevocable to sell. In *Mitchell* vs. *Bogan,* (11 Rich., 690,) the Court declared that if the mortgage contained in it a power of sale in the mortgagee, he would be enabled to sell on condition broken; and though that question was not directly before the Court, still it has been long settled in England. And in this State such mortgages are not unfrequently made, and their validity is unquestioned. If a mortgage contained such a power and the mortgagee, on condition broken, proceeded to sell, the mortgagor could not claim homestead, because neither of the contingencies required by our law to enable him to do so would have happened. The mortgagee could execute the conveyance, and the purchaser would take a good and marketable title.

That which the mortgagee could do, if the power of sale were given by deed, he surely could have done by the intervention of the Court if the mortgage were valid at the time that it was given. It would be a mere mockery of the law to say that at the moment of sale, if a Court should order it, the mortgagor could defeat the right of the mortgagee. Such a construction of the law would be to declare that an important right is entirely without a remedy. Under such a construction, no man could safely invest in mortgages to any large amount, because, however rich a man might be at the time that he executed a mortgage, how many pieces of real estate

he might then have, he might, before condition broken, become ruined in fortune; he might have parted with all of his real estate other than the piece mortgaged, and could then claim his homestead exemption out of the property mortgaged and defraud the mortgagee of his just rights. Mortgages would then become the most unsafe, instead of being, as they are now considered, among the most desirable investments. The Supreme Court, in the case of *Shelor* vs. *Mason*, (2 S. C., 233,) seems clearly to have recognized that homestead cannot be claimed in mortgaged property until the mortgage is satisfied. It seemed to recognize that public policy as well as common honesty and common sense went hand and hand with the law. In this case the only question before the Court, and the only question decided, was that of a mortgage given before the Constitution of 1868; but in the opinion, Judge Willard, speaking for the Court, uses this language: "The interest created by the mortgage is specific, while from its nature such exemption" (homestead exemption) "can only be brought into discussion when the remedy goes against the whole property of the debtor."

If these positions are correct, then it follows that homestead cannot be claimed in mortgaged property until the mortgage is satisfied by payment. The case is, however, much stronger when property has been mortgaged more than once. Our statute declares that a second mortgage deprives the mortgagor of his equity of redemption.—Rev. Stat., Chap. 82, § 8, p. 424. When the first mortgage is executed, all that the mortgagor has to dispose of is his equity of redemption; and, as the statute says that on the execution of a second mortgage he loses even that, it is evident that he has nothing remaining in him out of which a homestead can be claimed, even if homestead could be claimed in an equity of redemption so long as the mortgages remain unpaid.

The case becomes still stronger when a person goes into bankruptcy. There the mortgagor is out of possession, and the mortgage becomes by that fact a mortgage at common law. The assignee gets into his possession nothing but an equity of redemption, which only entitles him to redeem by payment of the mortgage. This position as to the possession of the assignee is sustained by Chief Justice Waite, who, in the case *In re Bennett*, a bankrupt, recently decided in the Circuit Court of the United States for the District of South Carolina, said: "The assignment in this case, under the operation of the Bankrupt Act, transferred

the fee to the assignees. Bennett had no longer any estate in the mortgaged property. Whatever right he had was then absolutely conveyed, and his grantees went into possession not as his tenants, but as owners. It is true that this conveyance may not have been voluntary, and that in one sense it was by operation of law, but it is equally true that its effect was to divest the mortgagor of his title and possession and place them both in the assignees. This is the legal effect of the adjudication of bankruptcy, the appointment and qualification of the assignees, and the official assignment by the Register or Judge. It is a conveyance by the bankrupt in the same sense that the deed of a Sheriff, after judgment, execution, levy and sale by him, is a conveyance by the judgment debtor. In the one case the Register or Judge and in the other the Sheriff is made by law the agent of the owner to convey. When, therefore, the assignment was made, the bankrupt mortgagor was 'out of possession,' and Mrs. Bennett became invested with all the rights and powers of a mortgagee at common law. As such she could obtain the possession of the mortgaged property by an appropriate possessory action at law, or subject the accruing rents and profits of the land to the payment of her mortgage by a proceeding in equity. She could, also, upon proper demand and notice, require tenants in possession to pay rent to her."

Enslow had mortgaged several times. His assignee was in possession. When the assignee and Enslow answered the complaint for foreclosure, there was nothing out of which a homestead could be claimed.

*Porter & Brawley*, contra:

The homestead exemption is not to the debtor as such, but is intended for the benefit of the family, and therefore no act of the head of the family, however intended or expressed, not even an express waiver, however solemnly executed, can defeat the right which attaches as an incident to the ownership of the estate without any previous act of appropriation, binds the estate and becomes a lien or claim upon it from the instant of its accrual, may be set off and assigned either before process issues or after, and all persons dealing with the head of the family must be held to deal with reference to this encumbrance, and whatever interest they take is taken subject to it.

It is an exceptionally favored estate, unknown to the common law, more favored even than dower, for while that right may be forfeited by misconduct or relinquished either for or without consideration, no misconduct of the head of the family, nothing that he can do or suffer, can deprive his family of that shelter of the homestead roof provided by the fundamental law and hedged about and protected by all the safeguards which the ingenuity of the law-makers could devise, so that nothing short of absolute removal from the State can operate to work a forfeiture, the object of the law evidently being to prevent emigration from the State at a critical period of her history and to foster domestic relations.

As the homestead right is entirely a creature of the Constitution and of statutory law, the Court is referred to the Constitution, Art. I, §§ 20, 32; XV Stat. at Large, 369, 374, §§ 1, 3, 5, 8, 10.

In the case before the Court, the dwelling house of Enslow was sold under a judgment of the Circuit Court, obtained in proceedings to foreclose a mortgage given by him to secure a bond to the appellant for money loaned in February, 1874, and the first question which arises is, whether this proceeding is "mesne or final process" within the purview of the Constitution and the statutes, which declare "that the family homstead of the head of each family residing in this State, such homestead consisting of dwelling house, * * * * shall be exempt from attachment, levy or sale on any mesne or final process issued from any Court upon any judgment obtained upon any right of action," * * * * * *provided,* "that no property shall be exempt from attachment, levy or sale for taxes or for payment of obligations contracted for the purchase of said homestead or the erection of improvements thereon."

"Process *a procedendo ab initio usque ad finem* hath two definitions. 1st. It is largely taken for all the proceedings in any action from the beginning to the end, and is divided into, first, original process to compelling appearance; second, mesne process, which issues pending the suit upon some collateral interlocutory matter; third, final process to enforce the judgment."

Process is any means adopted by the sovereign power to begin or carry on an action—mesne process being that interlocutory or intermediate proceeding which is adopted in order more thoroughly and effectually to accomplish that result which is obtained through the final process by which the object of the action is attained or carried into effect.

Any judicial proceeding, then, that operates upon person or property is process, mesne or final; an order of Court which directs the sale of property for the payment of a debt is certainly a process which is final as to that property, if there is any meaning in language; and unless the appellant can show that this case comes within some of the exceptions, it is difficult to deprive the family of the debtor of this exemption.

Three classes of obligations are excepted from the operation of this homestead exemption: 1st, taxes; 2d, obligations contracted for the purchase of the homestead; 3d, obligations contracted for the erection of improvements thereon.

It cannot be pretended that the obligation upon which this action is brought is covered by any of these exceptions. No other class of obligations is in terms exempted from the operation of the law and, *expressio unius, exclusio alterius.*

Under the old system of pleadings, a judgment in foreclosure was technically called a decree of foreclosure, but under the Code all decrees are not only really, but technically, judgments.

This Court held (*In re. Kennedy,* 2 S. C., 216,) that the homestead exemption was valid even as against the liens of judgments on contracts entered into before the adoption of the Constitution. And although since the decision of the Supreme Court of the United States, in the case of *Gunn* vs. *Barry,* the Courts modified the rule established, in so far as the same related to debts contracted prior to the adoption of the Constitution, yet there is no question but that the exemption is valid as against all judgments obtained upon debts contracted subsequent to that period.

Even were decrees essentially different from judgments, in what way is this case distinguished from the ordinary one of a creditor seeking satisfaction of his debt out of the property of his debtor, and how is it taken out of the operation of the principle upon which all exemption laws rest? Mr. Justice Willard, in the case referred to, states this principle to be " that the State will not lend its aid to the creditor by way of seizing and appropriating the property of the debtor to the discharge of his obligation to such creditor, to the extent of stripping the debtor of all the means upon which his power of future acquisitions depends. This principle is deeply rooted in a sentiment of humanity, having the force of moral obligations, binding the creditor to a merciful exercise of his power over his debtor, and in the conviction of the public conscience that

it is neither the duty nor the policy of government to enforce the rights of the creditor beyond the limits of a reasonable and humane exercise, nor to the extent of destroying the power of the debtor to obtain usefulness in his civil and domestic relations."

If this language was thought appropriate in the case of a creditor having a lien by way of judgment upon *all* the property of the debtor upon a cause of action accruing long before the adoption of the Constitution, upon a contract presumably entered into in view of the law then existing, which subjected the property of the debtor, to the uttermost farthing, to the payment of his debts, upon what principle of natural justice is it to be held inapplicable to the case of a creditor who has a lien only upon one piece of his debtor's property to secure a debt contracted after the adoption of the Constitution, in full view of that instrument, which declared that that specific piece of property should be exempt from sale for the payment of debts, and of that other provision which declared that no waiver of the right of homestead, however solemnly executed, should be binding upon the head of a family so as to defeat the same?

But it is claimed that that which the law forbids to be done directly has been accomplished indirectly by operation of law,—that is, that the mortgage to the appellant has operated to defeat the right of homestead. This view is based upon a misconception both of the character of the homestead right and of the nature of a mortgage. We have already cited these statutory provisions, which go to establish our proposition that the right of homestead is incident to the ownership of the land; that it is a paramount lien upon it; that whenever the head of a family is possessed of a homestead, the right to the homestead exemption attaches, and whoever deals with him must do so in view of such right, which exists in his family, and which he cannot of his own will defeat. We will now consider the nature of a mortgage, and here, too, we find statutory enactments which define it in terms not to be misunderstood.

The preamble to the Act of 1791 (5 Stat. at Large, 169,) recites that "mortgages are generally meant as securities for debts, and no actual estate is intended to be conveyed by the mortgagor to the mortgagee," and enacts that "no mortgagee shall be entitled to maintain any possessory action for the real estate mortgaged, even after the time allotted for the payment of the money secured by the mortgage is elapsed; but the mortgagor shall be still deemed

owner of the land and the mortgagee as the owner of the money lent or due."

That Act changed the common law in this State in relation to mortgages; and whereas before that date and at common law the legal estate was in the mortgagee, and only an equity of redemption remained ·in the mortgagor, since that time a mortgage has not been held to convey any interest in the land, but to be merely, in the words of the Act, a "security for a debt." So much so that even if it be expressly stipulated that if the money be not paid at a given day the title shall be absolute and the estate irredeemable, this stipulation operates nothing. "It is a well-known rule," says Chancellor Harper, in *Walling* vs. *Aiken,* (McM. Eq., 13,) "that that which was intended as a security shall never be turned into an absolute conveyance. The mortgagee is considered only as a creditor, and all that he is entitled to is his money, coming within what time (within the known limits) or from what source it may."

The reasoning of the appellant takes no sufficient account of the change wrought by the Act of 1791 in the nature of mortgages. Before that Act and at common law the legal title passed to the mortgagee upon the execution of a mortgage, and in some of the States that is still the rule. But in this State a mortgage is not a conveyance of the land either under the ancient law or the Statute of Uses, for it transfers no estate in the land whatever. It is not even the acknowledgment of a condition subsequent by which the estate of a mortgagor may be defeated, nor the stipulation by the owner of land of a covenant which runs with the land and imposes a burden on it, for such a condition or such a covenant can be created only when an estate in land is transferred. The term "equity of redemption," which is claimed by the appellants to be the only interest left in the mortgagor after the execution of the mortgage, is borrowed from the common law mortgage, but does not appropriately apply to mortgages under our Act of 1791, and is calculated to mislead. There can be no "redemption" when no estate has passed to be redeemed, and what is called the "equity of redemption" means nothing more and is nothing more than a legal right in the owner of the land to disencumber it. The mortgagor is so far the legal owner of the land that a judgment against him is a legal lien upon the land, subject to the mortgage, and the land so subject may be sold under execution against the mortgagor, and it is in like manner liable to lien and sale under judgments against

every subsequent owner of it, who has in like manner a legal right to disencumber it. So the mortgagor has the right to execute a second mortgage, or a third and fourth, as was done in the very case before the Court, which he could not do if all the interest that remained to him in the land after the first mortgage was a mere " equity of redemption," strictly so called.

The case of *Shelor* vs. *Mason*, (2 S. C., 233,) may be supposed to be of authority for the appellant. That case differs from this in two important particulars: 1st. The mortgage there was executed prior to the adoption of the Constitution, while here it was subsequent—subsequent, too, to the Act of February 22d, 1873. 2d. In that case it did not appear that the person claiming the homestead was insolvent, and that there was no other property out of which the exemption could be claimed, and the Court says that, "from its nature, such exemption can only be brought into discussion when the remedy goes against the whole property of the debtor." Here the defendant, Enslow, is in bankruptcy, and the remedy of plaintiff goes against his whole property, for if his debt is not paid out of the mortgaged premises, he can go against the estate generally.

In that case reference is made to *Bronson* vs. *Kinzie*, (1 How., 311; 318.) No authority can be derived from that case, because in the United States Courts the common law doctrine as to mortgages prevails, and the legal title is held to be in the mortgagee, who, upon condition broken, has the right to sue for and recover the land itself.

In what material respect does a mortgage differ from a judgment? The one is a lien upon the specific property mortgaged; the other is a lien upon a debtor's whole estate. All that the creditor can ask in either case is his money; in neither has he the right to the specific thing, the subject of the encumbrance, and in both he requires the aid of the process of the Court to enforce his claim. The creditor thus asking the aid of the State to secure payment of his debt is bound by those exemption laws which, out of considerations of humanity and public policy, have been adopted by the State. And if it be said that the rule for which we contend will entail inconvenience in the alienation of property, the answer is, that although it be the settled policy of the State to preserve the homestead roof for families, it cannot interfere in all cases with the exercise of individual rights; yet if, in the course of men's dealings, it be found necessary

to invoke the aid of the State, the process through which such aid is extended can only be called into existence and will only operate in accordance with the well-settled principles which exempt a certain amount of the debtor's property from sale for the payment of his debts.

The fifth Section of the Act of February 22d, 1873, provides that "no waiver of the right of homestead, however solemnly executed, shall be binding upon the head of the family, or, in case of his or her death, his or her heirs, so as to defeat the homestead herein provided for." This Section would seem to be especially intended for cases of mortgage of the homestead premises, for those are the only cases in which it is likely that a waiver of the right would be asked or considered necessary. It certainly would not be necessary for the vendor of the homestead to ask for such waiver, for it is expressly provided that the homestead cannot be claimed as against debts for the purchase money, and we can conceive of no state of facts which would seem to require a waiver of this right except where a head of a family was endeavoring to raise money on the pledge of his homestead, and would agree, in consideration of such advance of money, or other benefit to be derived, to waive his claim of homestead, and the law expressly declares that no such act shall be operative to defeat it.

No Court will permit that to be done indirectly which the law expressly forbids to be done, and that certainly would be the result if the position of the appellant is sustained. The law would be completely nullified, if, by the execution of a simple mortgage to secure the payment of money borrowed, the right of homestead could be defeated.

Lastly, it is contended that, by the assignment of his property in bankruptcy, the mortgagor is put out of possession, and, being "out of possession," the parties are left under the rule of the common law, which makes the mortgagee owner of the land in such cases, upon condition broken, and reference is made to our cases of *Durand* vs. *Isaacs* and *Mitchell* vs. *Bogan* to sustain this view. Those were cases where the mortgagor subsequent to the mortgage had alienated the land, and was, both in law and in fact, "out of possession," and they can have no application here, where both the legal and actual possession is in the mortgagor, for the very Act which, according to the appellants, vests the possession of the mortgagor's estate in the assignee, expressly excepts from the operation of the assignment such

property "as is exempted from levy and sale upon execution or other process or order of any Court by laws of the State of the bankrupt's domicile;" and there is a further proviso that the foregoing exceptions shall operate as a limitation upon the conveyance of the property of the bankrupt to his assignee; and by the words of the Act, "in no case shall the property hereby excepted pass to the assignee, or the title of the bankrupt thereto be impaired or affected."—Section 14 Bankrupt Act, U. S. Revised Statutes, page 981, § 5045.

The decision of Chief Justice Waite *in re* Bennett, cited by the appellant, throws no light upon this question, inasmuch as the facts and points in issue in that case were entirely different from those in the case before the Court, no question of homestead rights arising therein. Nor is the statement, in appellant's belief, that Enslow's "assignee was in possession," true in point of fact.

February 15, 1876. The opinion of the Court was delivered by

WILLARD, A. J. The defendant, Enslow, the head of a family residing within this State, mortgaged, in 1871, the premises on which he resided with his family. The premises appear to be such as might be considered a family homestead within the sense of the Constitution allowing exemption from certain process as against premises so held and occupied. These premises have been sold under a decree foreclosing such mortgage, and a portion of the purchase money arising from such sale is held under a decree of the Circuit Court asserting that the defendant, Enslow, is entitled to the same in right of his claim to homestead exemption as against his mortgage of said premises.

The appeal is from that decree and alleges that the homestead right cannot be asserted as against the mortgage made by Enslow.

There is no doubt but that Enslow could make a valid mortgage. A homestead had never been actually set apart. The homestead provisions do not in terms prevent the owner of lands from mortgaging them. Such an intent cannot be enforced as against the common law right of dominion unless it is found to be essential to the operation of the homestead provisions as it regards the specific effect of those provisions. All that the Constitution seeks to accomplish is to prevent premises so held and occupied from being subjected to process for the purpose of enforcing obligations of a certain character—Article II, Section 32. The right of dominion of the owner of lands, including the power to alien or encumber, is not

either directly or indirectly the subject of this provision. The whole force of the constitutional provision is expended in preventing interference in certain cases with that dominion. The statutes in pursuance of this clause of the Constitution do not enlarge the nature or operation of the homestead provision of the Constitution. Whether the Legislature had not the right to extend the measure of relief afforded to the heads of families by the Section above cited under a more general grant of legislative authority conferred by Section 20, Article I, of the Constitution, need not be considered at this time, for no such exercise of authority beyond the terms of Section 32, Article II, has been attempted. The statutes (General Statutes, 474,) merely provide specific means for accomplishing that which constituted the end and purpose of the Constitution as contained in Section 32, Article II. Had the mortgagee obtained possession of the mortgaged premises otherwise than by proceedings for their sale, either under authority conferred by law, or the contract of the parties, on the mortgagee, no question under the Constitution affecting the rightfulness of that provision could have arisen.

It remains, then, only to consider whether a judicial sale for the foreclosure of the mortgage is embraced under the description " attachment, levy or sale on any mesne or final process issued from any Court," contained in Section 32, Article II.

The portion of that Section involved in the present construction is as follows : " The family homestead of the head of each family residing in this State, such homestead consisting of dwelling house, outbuildings and lands appurtenant, not to exceed the value of one thousand dollars, and yearly product thereof, shall be exempt from attachment, levy or sale on any mesne or final process issued from any Court." It is obvious that process issued to enforce a judgment or decree for the payment of money, and which may be enforced against the whole estate of the judgment debtor, is here intended. To extend the sense of the Constitution, as demanded by the respondent, Enslow, would be equivalent to holding that no judgment nor order of any Court could bind such a homestead so as to disturb the possession of the occupant. This is manifestly beyond the intention of the Constitution.

It is noticeable that the exemption conferred by the Constitution is not limited in terms to the head of a family holding premises occupied as a family homestead by rightful title. Nor can this be regarded as an unintentional omission, if the object of the Constitu-

tion was merely to shield the possession of the family homestead against creditors having only a general right to subject the lands of their debtors to their judgments; for as against judgment creditors at large there is as much reason for protecting a homestead held by a defective title as one held by a good title. But the whole sense of the Constitution would have to be changed if we are to suppose that no judgment or order of any Court could become the means of ousting the possession of the head of a family, for that construction would necessarily include a judgment recovered by one having good title to the premises against one having a defective title. If we attempt to meet this difficulty by interpolating words in the Constitution, confining the right of exemption to cases where the person claiming such exemption holds by rightful title, then we disturb the provisions and deprive them of their obvious fitness, as they stand, to provide protection against judgment creditors having no other right to the land than that arising from the operation of process issued to enforce a money judgment or decree.

The view just presented is conformable to what was said by the Court in *Shelor* vs. *Mason.*—2 S. C., 233.

The sale for foreclosure was not forbidden by the Constitution as it regards the homestead in question, and the mortgagor has no right to claim any part of the proceeds of sale by reason of the alleged occuption of the mortgaged premises as a family homestead.

The judgment below must be modified accordingly.

*Moses*, C. J., and *Wright*, A. J., concurred.